UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION


LOIS V. FINCHER,                          )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )          No.  1:02CV157 TIA
                                          )
JO ANNE B. BARNHART, Commissioner         )
of Social Security,                       )
                                          )
                    Defendant.            )


**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration.  The

parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I.      Procedural History**

On February 6, 2001, Claimant Lois V. Fincher filed an application for Disability

Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. (Tr.

67-71).[1]  On February 7, 2001, Claimant filed amendments to her application.  (Tr. 70-71).    In

her applications for benefits, Claimant asserts that her disability precluded her from working

starting on May 18 and October 1, 1988, due to injury to her back and back pain.  (Tr. 67, 71).

In her Disability Report, Claimant asserts that she became unable to work because of her injuries

on January 30, 1989.  (Tr. 114A).  On initial consideration, the Social Security Administration

denied Claimant's claims for benefits.  (Tr. 59-62).  Claimant requested a hearing before an

_____

[1]"Tr." refers to the page of the administrative record filed by the defendant with its Answer.
(Docket No. 13/filed April 24, 2003).

Administrative Law Judge ("ALJ").  (Tr. 58).

On June 10, 2002, a hearing was held before an Administrative Law Judge ("ALJ").  (Tr. 19-36).  Claimant testified and was represented by counsel.  (Id.)  Thereafter, on August 7, 2002, the ALJ issued a decision denying Claimant's claims for benefits.  (Tr. 7-18).  The Appeals Council found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision on October 31, 2002.  (Tr. 2-4).  The ALJ's determination thus stands as the final decision of the Commissioner.  42 U.S.C. § 405(g).

II.     **Evidence Before the ALJ**

A.  **Hearing on June 10, 2002**

1.  **Claimant's Testimony**

At the hearing on June 10, 2002, Claimant testified in response to questions posed by the ALJ and counsel.  (Tr. 19-35).  Claimant is fifty-nine years old and her date of birth is January 8, 1943.  (Tr. 22).  At the time Claimant alleged disability, she was forty-six years old.  (Tr. 23). At the time her disability insurance expired, Claimant was forty-nine years old.  (Tr. 23).  Claimant testified that she finished eight years of school.  (Tr. 22).  Claimant testified that she is right-handed and 5 feet 2 inches tall and weighs approximately 110 pounds.  (Tr. 22).  Claimant lives with her husband who is a retired electrical worker.  (Tr. 28).  Her son lives next door and one daughter lives seven miles east of her house.  (Tr. 30).

Claimant last worked in 1989 as a housekeeper cleaning patients' rooms, waiting rooms, surgery and delivery rooms, offices, and bathrooms.  (Tr. 23, 25).  Claimant explained how she swept and mopped the tile floors, but vacuumed the hallways and the offices.  (Tr. 25).  Claimant testified that she worked as a housekeeper for three years but stopped working after injuring

herself while using a buffer. (Tr. 24). Claimant explained that she could not hold onto anything with her left hand, and her work required the use of her hands. Claimant also cited the pain in her shoulder as another reason why she stopped working. Before working as a housekeeper, Claimant testified that she had worked for over seven years as a sander of conveyor belts and a silk screener. (Tr. 24).

Claimant testified that during surgery, the doctor removed a ruptured disc from her neck area. (Tr. 25). Claimant explained that Dr. Hunter advised her that by continuing to work, she had stretched and ruined her muscles, and the only treatment available to her would be pain medications. (Tr. 26). Claimant opined that she did not want to become a drug addict, because she has a family. (Tr. 26). Claimant is not taking any prescription medication, but she takes Tylenol for her pain. (Tr. 30). Claimant explained that she endures the pain, because she fears turning into a drug addict like her three sisters-in-law. (Tr. 31). Claimant testified that she has experienced pain since injuring her neck in May, 1988, and that the pain has increased over the years. (Tr. 32). Claimant explained that she has not received medical treatment in the last two to three years, because she cannot afford medical insurance. (Tr. 32-33). Claimant testified that her husband has health insurance as a veteran, but she is not covered and cannot qualify for Medicaid because of her husband's retirement income. (Tr. 33).

Claimant testified in the last two to three years, her pain has escalated. (Tr. 26). Claimant explained that Dr. Hunter advised her that in a couple of years she would need to have injections into the area to alleviate the pain. (Tr. 26-27). Claimant testified that the pain is on her left side of her shoulders. (Tr. 27). Claimant testified that lifting causes pain in her shoulders, and she has no strength. (Tr. 27).

As to her daily activities, Claimant testified that she cooks, but cannot use heavy pans, because she cannot lift any weight. (Tr. 28). Claimant does the laundry, but her daughter does the vacuuming and the mopping for her and changes the comforters and quilts on the beds. (Tr. 28). If Claimant changes the bedding, she experiences pain for two days. (Tr. 28-29). Claimant testified that her daughter takes her grocery shopping, because she needs help removing the items from the shelf and placing the groceries in the cart. (Tr. 29, 35). Claimant testified that she can lift a five-pound bag of sugar. Claimant can handle a gallon of milk with her right hand. (Tr. 29). Claimant testified that she can drive to the bank into Sykesville, approximately ten miles round trip. (Tr. 29-30). While at home, Claimant watches television, reads, and walks around the yard for thirty minutes. (Tr. 30, 34). Claimant testified that she spends at least an hour each day lying down and has been doing so since her injury. (Tr. 34).

## 2. Forms Completed by Claimant

In the Work Activity Report completed by Claimant on February 6, 2001, Claimant reported last working at Missouri Delta Medical Center as a housekeeper on January 30, 1989. (Tr. 95-102). Claimant reported that she stopped working because work exasperated her condition. (Tr. 96). Claimant reported receiving a lump sum Workers Compensation payment in the amount of $9,126.89 in January 1991. (Tr. 98). The SSA interviewer noted that Claimant worked full time after the May 18, 1988, accident, until September 1988, when she worked part time because of her condition becoming worse. (Tr. 102). The interviewer noted that Claimant stopped working in January 1989, due to her condition. (Tr. 102).

In the Disability Report Adult, Claimant reported that she cannot work due to an injury to her back. (Tr. 114-118A). Claimant reported having two discs removed eleven years earlier and

having pain in her back.  (Tr. 114A).

## III.    Medical Records

On June 2, 1988, three days after a work-related accident, Claimant received treatment in the emergency room at Missouri Delta Medical Center.  (Tr. 149-50).  The emergency room doctor diagnosed Claimant with cervical muscle spasms and prescribed Flexeril.  (Tr. 149).  Claimant complained of neck stiffness and reported possibly hurting her neck while running a scrubber.  (Tr. 150).

On July 1, 1988, Dr. Michael Critchlow first treated Claimant at the Ferguson Medical Group for hot flashes, and Claimant reported the pain from a year earlier to be the same.  (Tr. 177).  Included in the doctor's impression was perimenopausal symptoms.  On August 16, 1988, Claimant reported abdominal pain, and the doctor referred her for an upper GI and an oral cholecystogram because of her fever.  (Tr. 177).  In the return visit on October 6, 1988, Claimant reported pain in her left upper arm and neck.  (Tr. 176).  Dr. Critchlow noted how the x-ray of her spine showed narrowing posteriorly of the C5-C6 interspace.  Dr. Critchlow found Claimant to have localized cervical arthritis and prescribed Clinoril.  (Tr. 176).  On October 21, 1988, Claimant reported little improvement on Clinoril and having been off work.  (Tr. 175).  Claimant once again reported that her hands turn black in the cold.  Dr. Critchlow took Claimant outside and had her place the palms of her hands against a cold steel door.  Dr. Critchlow observed that Claimant's hands did not really change color but became pale in color.  Nor did Dr. Critchlow notice a great change in Claimant's color of her hands after Claimant held a glass of water for two to three minutes.  Claimant also reported pain in her neck and numbness in the triceps area.  (Tr. 175).

In a letter dated November 7, 1988, Dr. Riyadh Tellow reported his findings after examination of Claimant on referral by Dr. Critchlow. (Tr. 158). Claimant reported pain since the accident using a scrubber. Claimant reported some changes to her cervical spine as a result of the accident. (Tr. 158). Examination revealed that Claimant appears to be in some pain and somewhat depressed. (Tr. 159). Dr. Tellow found Claimant's cervical and thoracolumbar spine to have a full range of motion and some moderate amount of muscle spasms in the Trapezius area of Claimant's left side. (Tr. 159). In the assessment, Dr. Tellow found evidence of injury to Claimant's long thoracic nerve or one of its roots on the left side, C6-C7 root irritation or compression on Claimant's left side causing left Trapezius weakness and depression. (Tr. 160). Dr. Tellow ordered a MRI of Claimant's cervical spine, an EMG, and a nerve conduction study. Dr. Tellow prescribed Desyrel at bedtime. After discussing modalities of treatment with Claimant, Dr. Tellow ruled out the use of non steroidal anti-inflammatory medications or muscle relaxants, physical therapy, or TENS units at Claimant's direction. (Tr. 160).

The November 11, 1988, a MRI of Claimant's cervical spine revealed midline discogenic bulge at the C5-C6 level with slight extradural impression at the anterior contour of the dural sac at the midline. (Tr. 157, 178-81). Claimant reported her neck and left shoulder pain being caused by the accident using a scrubber at work. (Tr. 181). Dr. Carl Ritter further opined that Claimant had no deformity of the cervical spinal cord or nerve roots. (Tr. 157).

The November 21, 1988, electrophysiologic evaluation revealed a normal study. (Tr. 156).

Dr. Yong Kim, a neurologist, reported his findings in a letter dated January 17, 1989, to Dr. Tellow after seeing Claimant on referral. (Tr. 145). Claimant described her pain as being in

the posterior neck more toward the left side and around the left shoulder blade with no radicular symptoms. The neurological examination revealed normal results. Dr. Kim noted that the C-spine x-ray showed degenerative disc disease at C5-6 and slightly posteriorly dislocated at C5 on C6 with similar findings found in a MRI. Dr. Kim opined that Claimant seemed to be experiencing neck and shoulder pain due to the osteospondyloric disease and degenerative disc disease at C5-6 as evidenced by posterior subluxation of C5 on C6. Dr. Kim noted that Claimant's pain appears to be a more chronic ongoing pain than the consequence of the work injury. Dr. Kim further opined that Claimant's neck pain might have started following an aggravating injury to the pre-existing condition. Dr. Kim noted: "At times, resection of these edges of the protruding bone and fusion relieves the pain considerably. However, I am not sure how much is the true pain and how much is the secondary gain for the Workmen's Compensation." (Tr. 145). Dr. Kim concluded that he was therefore very hesitant to pursue surgery and suggested conservative treatment as long as possible. Dr. Kim noted if Claimant's secondary gain factor was eliminated and she still experienced pain, he would consider surgical exploration. (Tr. 145).

On January 24, 1989, Dr. Tellow assessed Claimant based on Dr. Kim's findings. (Tr. 153). Dr. Tellow found Claimant to have bulging disc at the C5-6 level with slight extradural impression and instructed Claimant to continue to use Indocin, heat and range motion exercises. Dr. Tellow opined that Claimant had obtained a degree of permanent partial disability of about seven percent and instructed Claimant to return to work. (Tr. 153). In a letter dated January 24, 1989, Dr. Tellow opined that Claimant was released to work on January 30, 1989. (Tr. 154). In an unsigned, undated note, the follow notation reads: "Dr. Tellow released her to return to

work 1/30/89 (DOA 6-1-88)." (Tr. 144).

Claimant cancelled her follow-up visit with Dr. Critchlow at Ferguson Medical Group on February 14, 1989. (Tr. 175).

In the Statement of Medical Necessity for a Transcutaneous Electrical Nerve Stimulator ("TENS") dated February 15, 1989, Dr. Tellow determined a permanent home use of TENS was not required. (Tr. 152). Dr. Tellow provided a guarded prognosis for his diagnosis of Claimant's cervical and thoracic pain since June, 1988. Dr. Tellow opined that TENS had given Claimant significant pain relief. (Tr. 152).

On April 5, 1989, Claimant reported head congestion and choking in her throat in a follow-up visit with Dr. Walton at the Ferguson Medical Center. (Tr. 175). Dr. Walton prescribed Afrin, Amoxicllin, and Actifed. (Tr. 174).

On April 10, 1989, Dr. David Perkins, a radiologist, reported the radiographic examination results of Claimant's left scapula to Dr. Jerome Levy. (Tr. 143). Dr. Perkins noted that the x-ray revealed negative results. (Tr. 143).

In a letter dated April 14, 1989, Dr. Levy reported his findings to Claimant's counsel. (Tr. 140-42). Claimant reported injuring her back while working as a housekeeper in May 1988. (Tr. 140). Claimant reported not being able to work since November, 1988. Claimant received treatment in the emergency room and thereafter Dr. Critchlow and Dr. Tellow treated Claimant with medications. A MRI scan revealed a ruptured disc. Claimant reported continued discomfort in her neck and left shoulder. (Tr. 140). Dr. Levy noted he reviewed Dr. Tellow's report finding muscle spasms in Claimant's left trapezius area, winging of Claimant's left scapula, and weakness of Claimant's left upper extremity musculature, especially her left triceps. Dr. Hunter noted that a

- 8 -

radiology report of November 11, 1988, revealed mild discogenic bulge at C5-6 with slight extra dural impression. Examination revealed a full range of motion of Claimant's neck with minimal discomfort and a full range of motion of all joints of the upper extremities without discomfort. (Tr. 141). Dr. Levy diagnosed Claimant with chronic cervical strain, bulging C5-6 disc, and a possible long thoracic nerve injury due to stretch. (Tr. 142). Dr. Levy opined that as result of the accident in May, 1988, Claimant has " a permanent partial disability which I would rate at twenty percent (20%) of the woman as a whole due to the problem with her neck and twenty percent (20%) of the left upper extremity at the shoulder." (Tr. 142).[2]

On August 24, 1989, Claimant reported lower back pain and frequent urination to Dr. Walton. (Tr. 174). Examination revealed no CVA tenderness. Dr. Walton opined that he will evaluate Claimant's reported lengthy problem related to a work injury involving her neck and back. (Tr. 174). In a follow-up visit on January 4, 1990, Dr. Walton noted that Claimant's examination to be unremarkable. (Tr. 173). Claimant reported having an evening fever and menopausal symptoms. (Tr. 173).

On March 22, 1990, Dr. Samuel Hunter, a neurologist, assessed Claimant during an office visit. (Tr. 135). Claimant reported an injury in May 1988 and being treated by a local doctor and then being referred to a neurosurgeon, Dr. Kim. Dr. Kim determined Claimant to have subluxation and changes of a central disc rupture at C5, but he did not recommend any surgical treatment. Dr. Tellow referred Claimant to Dr. Hunter for treatment. Examination revealed

---

[2]"A medical source opinion that an applicant is 'disabled' or 'unable to work' ... involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005), citing Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).

trigger points in the left trapezius and rhomboid, the major area of reported pain by Claimant. Dr. Hunter noted that physiotherapy and posturing had not provided long-term relief to Claimant's cervical pain. Dr. Hunter noted that Claimant has a restricted range of motion and recommended a MRI. Dr. Hunter opined that central disc problem responds well to the disectomy without fusion. (Tr. 135).

In the Pain Questionnaire completed for Dr. Hunter, Claimant reported first experiencing pain in May 1988 after an accident at work. (Tr. 136).

On April 18, 1990 at Baptist Memorial Hospital, Dr. Hunter performed an anterior diskectomy C5 with decompression of left C6 nerve root as treatment of Claimant's ruptured cervical disk. (Tr. 121-22, 132).

In the history section, Dr. Hunter noted that Claimant reported injuring her back at work in May 1988 and having been treated by a local physician. (Tr. 122, 125). Claimant reported seeing Dr. Kim, a neurosurgeon, who found Claimant to have subluxation changes at central disk C5, but he did not recommend surgical treatment. (Tr. 122). Claimant reported her condition having continued to deteriorate and experiencing constant, aching pain. Dr. Hunter noted that Claimant had a restricted range of motion. The MRI showed a C5 disk herniation. (Tr. 122).

Dr. Hunter noted that Claimant did not experience any complications postoperatively. (Tr. 122). Claimant reported great relief with the surgical procedure. (Tr. 122). Dr. Hunter prescribed Talwin NX for pain relief. (Tr. 123).

In the pathology report, Dr. John Fullenwider and Dr. T. H. Dudley reviewed Claimant's tissue and opined in the diagnosis: "tissue consistent with herniated intervertebral disc." (Tr. 127).

In a follow-up visit with Dr. Walton on July 11, 1990, Claimant reported low back pain and nausea. (Tr. 173). Examination revealed no CVA tenderness. (Tr. 173). Claimant returned on August 6, 1990, and reported low back pain and a sinus problem. (Tr. 172). Examination revealed some back tenderness but no flank tenderness. (Tr. 172).

In a letter dated September 25, 1990 in response to counsel's request regarding a percentage of disability of Claimant, Dr. Hunter opined that Claimant's disability as a whole would be eleven percent. (Tr. 130).[3]

On October 11, 1990, Claimant reported having a sore throat, running a temperature, and experiencing low back pain. (Tr. 171). In a follow-up visit on October 15, 1990, Claimant reported having a relapse and low back pain. Examination revealed tenderness over the right maxillary and both frontal areas. Dr. Walton prescribed Augmentin. (Tr. 171). In a recheck visit on October 17, 1990, Claimant reported feeling much better and no longer being tender or febrile. (Tr. 170). On January 16, 1991, Claimant reported lower back pain and a high temperature the night before. (Tr. 169). Examination revealed no CVA tenderness. Dr. Walton noted that Claimant's pain is in the lumbar region. In a return visit on February 1, 1991, Claimant reported a sore throat and not feeling well. Dr. Walton prescribed Augmentin and Entex-LA for ten days. (Tr. 169).

In the Psychiatric Review Technique completed by Dr. Joan Singer, Ph.D., on April 18, 2001, Dr. Singer determined that Claimant's records are insufficient to substantiate a medical

---

[3]A treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

disposition of affective disorders. (Tr. 79-92). Dr. Singer opined in the Consultant's Notes as follows:

> Claimant has no psych allegations. She has a DLI of 12/31/92. There is a mention in the file on 11/7/88 by a neurologist that she has depression secondary to her physical complaints. No other mention of a DX or TX in the file. DD is unable to document current DX or severity due to the DLI. There is insufficient evidence to determine her level of functioning from a psychiatric standpoint prior to the DLI. Disability is denied.

(Tr. 91).

On September 24, 1991, Claimant reported experiencing hot flashes and being on an emotional roller coaster. (Tr. 168). Dr. Walton prescribed Provera and estrogen. On December 10, 1991, Claimant requested a lyme titer, because she had been bitten by a tick in the summer. Dr. Walton noted that Claimant has an urinary tract infection and prescribed Noroxin. (Tr. 168). Claimant cancelled her scheduled appointment on January 31, 1992. (Tr. 167). On March 25, 1992, Claimant returned and reported a sore throat and Dr. Walton prescribed Cipro for five days, Tylenol, and rest. (Tr. 167).

## IV. The ALJ's Decision

The ALJ found that Claimant met the disability insured status requirements on the date Claimant alleged she became disabled, and continued to meet them through December 31, 1992. (Tr. 16). The ALJ found that Claimant has not engaged in substantial gainful activity since January 30, 1989. (Tr. 16). The ALJ found that the medical evidence establishes that Claimant has severe impairments, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 16-17). The ALJ found that Claimant is not credible. (Tr. 17). The ALJ further found that Claimant

has the residual functional capacity to perform the physical exertion and non-exertional requirements of an extremely wide range of light exertional work except being mildly restricted in the use of her left upper extremity. The ALJ opined that Claimant is able to perform her past relevant work and has an unskilled work history. (Tr. 16).

Considering Claimant's age, education, and residual functional capacity for an extremely wide range of light work, the ALJ opined that Claimant is not disabled at any time through the date of his decision. (Tr. 17).

## V.    Discussion

In a disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382(a)(3)(B); <u>see</u> <u>also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for

disability benefits. 20 C.F.R. § 404.1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts

from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1.   The credibility findings made by the ALJ.

2.   The claimant's vocational factors.

3.   The medical evidence from treating and consulting physicians.

4.   The claimant's subjective complaints relating to
     exertional and non-exertional activities and impairments.

5.   Any corroboration by third parties of the
     claimant's impairments.

6.   The testimony of vocational experts when required which
     is based upon a proper hypothetical question which sets forth the claimant's
     impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole because the ALJ failed to properly assess Claimant's credibility regarding her subjective testimony. Claimant also contends that the ALJ erred in formulating the RFC assessment.

A.   Credibility Determination

Claimant argues that the ALJ failed to properly assess Claimant's credibility regarding her subjective complaints of disabling pain.

The determination of Claimant's credibility is for the Commissioner, and not the Court, to decide. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). The ALJ may not discredit Claimant's complaints of pain solely because they are unsupported by objective medical evidence. O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003); Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). Instead, the ALJ must also consider all of the evidence relating to the Claimant's prior work record and third party observations as to;

1.  claimant's daily activities;

2.  duration, frequency and intensity of the pain;

3.  precipitating and aggravating factors;

4.  dosage, effectiveness and side effects of medication;

5.  functional restrictions.

Polaski, 739 F.2d at 1322. The ALJ may disbelieve the claimant's subjective complaints "if there are inconsistencies in the evidence as a whole." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).

The undersigned recognizes that pain itself may be disabling. See Loving v. Department of Health & Human Servs., 16 F.3d 967, 970 (8th Cir. 1994). However, "the mere fact that working may cause pain or discomfort does not mandate a finding of disability." Jones, 86 F.3d at 826. "[T]he real issue is how severe the pain is." Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991)).

When determining a claimant's complaints of pain, the ALJ may disbelieve such complaints if there are inconsistencies in the evidence as a whole. Polaski, 739 F.2d at 1322. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810, 813 (8th Cir. 1989). "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). Where an ALJ explicitly considers the Polaski factors but then discredits a claimant's complaints for good reason, his decision should be upheld. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1966). The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000); see also Brown, 87 F.3d at 966. The ALJ's credibility findings are entitled to deference if the findings are supported by multiple valid reasons. See Goff v. Barnhart, 421 F.3d 785, 791-92 (8th Cir. 2005); Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits claimant and gives good reasons for doing so, court will normally defer to credibility determination).

In his decision the ALJ thoroughly discussed the medical evidence of record, the lack of ongoing medical evidence corroborating Claimant's subjective complaints of disabling pain, and the testimony adduced at the hearing, including Claimant's testimony as to her daily activities. See Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's

subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities). The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). The ALJ then addressed several inconsistencies in the record to support his conclusion that Claimant's complaints of pain were not credible.

Specifically, the ALJ noted that no treating physician in any treatment notes stated that Claimant was disabled or unable to work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). In addition, the ALJ noted that no physician had ever made any medically necessary restrictions, restrictions on her daily activities, or functional limitations. Indeed, after the surgery in April 1990, Claimant reported great relief from the procedure to Dr. Hunter, and Dr. Hunter placed no functional restrictions on Claimant. During the hearing, Claimant testified that she could not afford more frequent medical treatment due to lack of medical insurance and financial resources. The record is devoid of any evidence suggesting that Claimant sought any treatment offered to indigents. See Nelson v. Sullivan, 966 F.2d 363, 367 (8th Cir. 1992)(holding the mere

use of nonprescription pain medication is inconsistent with complaints of disabling pain); Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992)(finding it is inconsistent with the degree of pain and disability asserted where no evidence exists that claimant attempted to find any low cost medical treatment for alleged pain and disability). Likewise, the record is devoid of any evidence showing that Claimant had been denied medical treatment or access to prescription pain medications on account of financial constraints. See Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994). Claimant also testified at the hearing that she has to lie down for at least one hour a day, but there is no objective medical evidence substantiating Claimant's need to lie down. See Harris v. Barnhart, 356 F.3d 936, 930 (8th Cir. 2004) (whether there is a need to lie down is a medical question requiring medical evidence; record did not contain any evidence that medical condition required claimant to lie down for hours each day). In addition, Claimant worked until January 30, 1989, seven months after her alleged date of disability. Indeed, the ALJ specifically noted how Claimant testified that she refused to take pain medication as prescribed by a doctor. See  Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997) (determining that failing to seek treatment was inconsistent with claimant's subjective complaints of disabling pain); Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993)(lack of ongoing treatment is inconsistent with complaints of disabling condition).

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out

inconsistencies in the record that tended to militate against the Claimant's credibility. Those included Claimant's minimal, ongoing treatment for pain, her lack of functional restrictions by any physicians, her daily activities, and lack of pain medications. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints of pain. See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001)(affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

B.      Residual Functional Capacity

Claimant argues that the ALJ erred in erred in formulating the RFC assessment.

At step three of the evaluation process the ALJ found that the Claimant has severe impairments, but that she does not have an impairment or combination of impairments listed in, or

medically equal, to a listed impairment.  At step four, the ALJ found that the Claimant is able to

perform her past relevant work.  But, the ALJ found that the Claimant retains the residual

functional capacity ("RFC") to perform the physical exertion and non-exertional requirements of a

wide range of light exertional level work except that she is mildly restricted in the use of her left

upper extremity.  Thus, the ALJ determined that the Claimant is able to perform a wide range of

light work.

  "The ALJ must determine a claimant's RFC based on all of the relevant evidence."

Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004).  It is the responsibility of the ALJ to

assess a claimant's RFC based on all the evidence, including medical records, the opinions of

treating and examining physicians, as well as the claimant's own statements regarding his

limitations.  McGeorge v. Barnhart, 321 F.3d 766, 768 (8th Cir. 2003); McKinney v. Apfel, 228

F.3d 860 863 (8th Cir. 2000) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).  "In

analyzing the evidence, it is necessary to draw meaningful inferences and allow reasonable

conclusions about the individuals's strengths and weaknesses."  SSR 85-16.  SSR 85-16 further

delineates that "consideration should be given to ... the [q]uality of daily activities ... [and the

ability to sustain activities, interests, and relate to others *over a period of time*" and that the

"frequency, appropriateness, and independence of the activities must also be considered."  SSR

85-16.

  An ALJ must begin his assessment of a claimant's RFC with an evaluation of the

credibility of the claimant and assessing the claimant's credibility is primarily the ALJ's function.

See Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003) (finding a claimant's credibility is

primarily a matter for the ALJ to decide); Pearsall, 274 F.3d at 1218.  In making a credibility

determination, an ALJ may discount subjective complaints if they are inconsistent with the record as a whole. Holstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). In Polaski, the Eighth Circuit set out factors for an ALJ to consider when determining the credibility of a claimant's subjective complaints. Polaski, 739 F.2d at 1322. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). See also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810, 813 (8th Cir. 1989); Ghant v. Bowen, 930 F.2d 633, 637 (8th Cir. 1991). "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). An ALJ is only required to consider impairments he finds credible and supported by substantial evidence in determining a claimant's RFC. See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) ("The ALJ properly limited his RFC determination to only the impairments and limitations he found to be credible based on his evaluations of the entire record." )

The ALJ's determination of the Claimant's RFC is supported by substantial evidence in the record. The ALJ properly evaluated the medical evidence in the record and opined that the

medical evidence diminishes Claimant's credibility. The ALJ noted that at the time of the hearing, Claimant's reaching limitation did not significantly erode her ability to perform light work. The ALJ further noted that the medical record does not show that any physician found Claimant unable to work. The ALJ further opined that Claimant's assertions regarding the intensity of pain are inconsistent with Claimant's history of treatment. The ALJ also properly considered the Polaski factors in concluding that "claimant lacks credibility in other respects." (Tr. 13). The ALJ listed facts from the record regarding the Polaski factors that reflected upon the Claimant's ability to perform light work such as her failure to receive consistent medical treatment, the lack of functional restrictions, and lack of pain medication except for over the counter medications. Further, the ALJ pointed out other inconsistencies in the record that tended to militate against Claimant's credibility. Those included Claimant's gap in medical treatment, her ability to work after the alleged onset date of disability, absence of prescribed pain medications, failure to follow prescribed course of treatment, absence of any doctor finding Claimant disabled or imposing any functional limitations, lack of medical treatment, and possible secondary gain issue.

Based on the ALJ's analysis of the medical evidence and Claimant's credibility, the undersigned finds that there exists in the record substantial evidence to support a finding that the Claimant retains an RFC to perform a wide range of light work. The ALJ's determination does not contradict any of the medical evidence, and nothing else in the record detracts from his decision. Notably, Claimant was free to provide evaluations supporting her contentions. See 20 C.F.R. § 404.1512(c) ("Your responsibility.... You must provide evidence showing how your impairment(s) affects your functioning during the time you say that your are disabled, and any other information that we need to decide your case."); Eichelberger v. Barnhart, 390 F.3d 584,

591 (8th Cir. 2004) ("A disability claimant has the burden to establish [his] RFC.").

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY ORDERED** that the decision of the Commissioner be affirmed and that Claimant's complaint be dismissed with prejudice.

Dated this  2nd  day of May, 2006.

   /s/ Terry I. Adelman
   UNITED STATES MAGISTRATE JUDGE